Filed 5/23/14  P. v. Vasquez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056036 |
| v. | (Super.Ct.No. INF10002190) |
| GABRIEL MORALES VASQUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David B. Downing, Judge.  Affirmed.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant, Gabriel Vasquez, of committing lewd and lascivious acts on a minor (Pen. Code, § 288, subd. (a)).  He was sentenced to prison for six years and appeals claiming the jury was misinstructed.  We reject his contention and affirm.

## FACTS

The victim, who was five at the time of trial, testified that when she was four years old and visiting her father at defendant's house (defendant was her paternal grandfather), defendant touched her genitals and inside her genitals with his hand while she and her two brothers were in the living room with defendant.  She immediately reported this to her father, who was in his bedroom, and he became upset.  When she returned to her mother's house that night, she reported the incident to her mother, who examined her genitals, and to her mother's live-in boyfriend.

The victim's father testified for the defense and denied that on August 26, 2010, the victim had said anything to him about defendant.  He asserted that his children were never alone with defendant and he denied telling the police that they were.  Defendant testified, denying that he ever touched the victim or that his grandchildren saw him naked.  He denied being alone with his grandchildren around the time of the crime.

More facts will be disclosed as they are relevant to the issue discussed.

## ISSUE AND DISCUSSION

Before trial began, the jury was given the following instruction, inter alia, "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony.  Among the factors that you

2

may consider [is] . . . [¶] . . . [¶] [d]id the witness make a statement in the past that is consistent or inconsistent with his or her testimony?"[1]

During her opening statement, defense counsel called the jury's attention to statements the victim had made to a forensic interviewer the day after the crime that her brothers had touched her butt and her genitals.

The younger of the victim's two older brothers (the younger brother), who was seven years old at the time of trial, testified that while he and his older brother were playing catch outside defendant's home,[2] the victim came outside looking scared. Later that night, she told him that defendant had touched her in her private parts.[3] The trial court immediately instructed the jury, "[W]hat [the younger brother] has just told us is something the [victim] told him. So let me explain that to you. [¶] During the trial, certain evidence is being admitted for a limited purpose, and this is the area we're in. You may consider that evidence only for that purpose and for no other. The rule is this, proof of an extrajudicial complaint made by the victim of a sexual offense—so we talked about [the victim's] statement to [the younger brother] . . . disclosing the alleged assault may be admissible for a limited nonhearsay purpose, namely, to establish the fact of and

---

[1] This instruction was repeated at the end of trial.

[2] Both the children's mother and defendant testified that the home where the children's father lived belonged to defendant.

[3] On redirect, the brother testified that he did not remember the victim telling him this.

the circumstances surrounding the victim's disclosure of the assault to others. Whenever the fact that that disclosure was made and the circumstances under which it was made are relevant to the trier of facts, that is the jury's[4] determination as to whether the offense occurred. . . . That is the rule."

The older of the victim's brothers (the older brother) testified that he was playing video games with the younger brother in their father's room of defendant's house when the victim came into the room from the living room and, crying a little, told him that defendant had touched her private part one time, so the older brother told her to stay in the bedroom with them. The trial court did not, at that point, instruct the jury about this testimony. The older brother went on to testify that their father came home later that night and the following morning, he told his father what the victim had told him in the presence of the victim and the younger brother. When the children returned to their mother's house, the older brother told his mother, then her live-in boyfriend.

The victim's mother testified that on August 26, 2010, her children returned late from defendant's home. The victim, who appeared to be very scared, told the mother that her genitals hurt. The mother took the victim to the bathroom to examine her genitals and she asked the victim why they hurt. The victim said that defendant had touched her

---

**4** We note that, according to the Reporter's Transcript, the trial court inserted a period between the word "others" and the word "Whenever" and a comma and the words, "that's the jury's" between "trier of facts" and "determination as to whether . . . ." Other than this, and a few irrelevant asides, this first statement of the fresh complaint doctrine contains exactly the language in CALCRIM No. 303 and in the holding in *People v. Brown* (1994) 8 Cal.4th 746, 749, 750 (*Brown*). (See text, *infra*)

with his fingers.  After the mother stated *a second time* what the victim had told her defendant had done, defense counsel immediately objected to that statement on the basis of hearsay and the prosecutor responded that he was offering it as, inter alia, a fresh complaint.  The trial court then said to the jury, " . . . I told you [before] what a fresh complaint was.  That, again, is a proof of an extrajudicial complaint which is made outside the courtroom, made by the victim of a sexual offense, disclosing the alleged assault, and is admissible for the limited purpose, the nonhearsay purpose, namely, to establish the fact of and the circumstances surrounding the victim's disclosure of the assault to others.  That would be [the victim's] disclosure . . . to her mother . . .  of what happened, the witness here.  . . .  So that's the fresh complaint doctrine.  So it's admissible under that theory."  The mother went on to testify that when she examined the victim, she noticed that her genital lips were red, which was abnormal, and the mother told her live-in boyfriend and cried in the presence of him and the victim.

The mother's live-in boyfriend testified that when the mother came out of the bathroom crying, she showed him the victim's genitals and he asked the victim what had happened.  Defense counsel immediately objected on the basis of hearsay and the trial court responded that it was admitting the testimony as, inter alia, a fresh complaint.  The boyfriend then testified that the victim told him that her privates hurt and defendant had touched them.  When the boyfriend asked the victim what she meant, she said that defendant had hurt her with his nail when he put his finger in and out and the younger

5

brother had tried to enter the room where defendant and the victim were and defendant had told him to leave.

When the doctor who examined the victim testified that she received a history of what had happened to the victim from the forensic examiner,[5] and was asked what her understanding of that history was, the trial court said, in response to defense counsel's hearsay objection, "[W]hat the doctor is about to tell you is what she understood [to have] happened, so that she can conduct her [examination of the victim]. You are not to consider what the doctor was told . . . for the truth of the matter asserted, but rather she was told that, all right, if that helps. In other words, what the doctor is about to say that someone told her about what happened to [the victim], you cannot consider it for the truth of the matter of that. [¶] Obviously, . . . before [the doctor] conducts a[n examination], she has to know what happened, and often she gets information, as she told you, from various people. So don't consider that information coming to the doctor as the truth of that information." The doctor went on to testify that the victim had said that defendant had touched her private parts with his fingers and she was in pain.

The prosecution also introduced a recording of the victim's forensic interview on August 27, 2011, in which she said, inter alia, that defendant took off his pants and she

_____

[5] Appellate counsel for defendant is under the impression that this person was a psychologist. This is not supported by the record. Nowhere in the record is she described by anyone as a psychologist. She is identified on the transcript of the recorded interview as being from Riverside County Children's Social Services and the doctor who examined the victim described her as someone who worked at the Child Abuse Unit of the Riverside County Regional Medical Center, doing a lot of forensic interviews.

saw his penis while defendant was showering and she was using the toilet and defendant drinks and when he is drunk, he touches her genitals with his finger and her butt and she saw his butt and saw him touch his penis. Then she said twice that defendant did not touch her genitals, then she said he did, "a little bit." In the same interview, before making the contradictory statements about defendant, the victim, who was four at the time, said that both of her brothers had touched her genitals and her butt while she had her clothes on, despite the fact that she told them not to. She said that only her brothers touched her butt or her genitals. She said that before her genitals began to hurt, the older brother touched and opened them, then she said he did not, then she said he did, but it did not hurt.

During instructions to the jury at the conclusion of trial, the court below said, "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and no other. [The victim] made statements to some of the witnesses who have testified at this trial. Proof of an extrajudicial complaint made by the victim of a sexual offense disclosing the alleged assault may be admissible for a limited nonhearsay purpose—namely, to establish the fact of and the circumstances surrounding the victim's disclosure of the assault to others—whenever the fact about that disclosure are made and the circumstances under which it was made are relevant to the jury's determination as to whether the offense occurred."

Before trial had begun, the trial court had tentatively decided to give an instruction on the fresh complaint doctrine that was a combination of CALCRIM No. 303 and the

holding in *Brown, supra,* 8 Cal.4th 746. CALCRIM No. 303 provides, "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." *Brown* held, as to the fresh complaint doctrine, " . . . [P]roof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose— namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*Brown*, *supra*, 8 Cal.4th at pp. 749-750.) The trial court invited both counsel to submit to it, before trial began, any language they wanted to include in the tentative instruction because it said that it intended to give the instruction as soon as the first witness testified to a fresh complaint the victim had made. There is no further mention of the tentative instruction in the record before us until it was given the first time at trial, as stated above. The trial court informed counsel that it would be giving them its completed set of jury instructions before trial began. The following day, the trial court noted that it had handed both counsel its set of instructions the previous day which was the same day the instruction at issue was given for the first time. While discussing jury instructions to be given at the end of trial, the court said it would give CALCRIM No. 303 "with . . . *People v. Brown*, 8 Cal.4th 746, phrased in there." Defense counsel was asked if she had any thoughts about changes to or modifications of any of the instructions or pinpoints and she said she did not.

Defendant now, for the first time, claims that the instructions given as to fresh complaint doctrine, were incapable of being understood by the jurors. Specifically, he asserts that because the instruction made reference to hearsay, it required the jury to be familiar with the hearsay doctrine—not so. An understanding of the hearsay doctrine was not necessary to an understanding of the fresh complaint doctrine. Moreover, the instructions were often given in the wake of defense counsel's hearsay objections. We note that this trial court encouraged the jurors to submit to it questions they wanted asked of witnesses, which is unusual in our experience reviewing trials in the courts under our jurisdiction. Under these circumstances, we find it hard to fathom that any juror who found the instruction on the fresh complaint doctrine confusing would not have asked for clarification from the trial court, but none did, not even during deliberations. Beyond this, if defendant wanted clarification of the instruction, it was incumbent upon him to request it or the matter is waived. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1165.)

Defendant next claims that the giving of CALCRIM No. 318 rendered the instructions on the fresh complaint doctrine even more confusing to the jury. By way of background, during the victim's testimony, at the beginning of trial, defense counsel said that if the prosecutor did not play the tape of the victim statements to the forensic interviewer, she would. As stated before, the victim made contradictory statements during this interview about whether defendant had touched her. During the mother's testimony, as stated before, she said that after the victim told her that her genitals hurt, the mother asked her why and the victim said that defendant had touched her genitals

9

with his fingers, the mother took the victim to the bathroom and examined her there. Defense counsel did not object to this. When asked if she ever questioned the victim more in detail about what happened or how she got hurt, the mother testified that the victim "kind of just said it on her own." When asked what the victim said, the mother repeated that she said that defendant had touched her. After defense counsel objected on the basis of hearsay to this, the prosecutor said he was offering it as both a fresh complaint and a prior inconsistent statement. As to the latter, the court instructed the jury, "It may be admissible under another theory [in addition to being a fresh complaint] which is a prior inconsistent statement. [The victim] testified . . . to certain things. You can evaluate what she said here as to what she said to her mom, this witness, and determine whether the statements were inconsistent or consistent. And for this reason, I will overrule the defense objection. What [the victim] said to [her mother] comes in under either theory." The mother went on to finish her testimony on the subject by saying that the victim said that defendant had touched the victim with his fingers.

As stated before, when the mother's boyfriend testified, defense counsel objected on the basis of hearsay when he was asked what the victim had said to him when he asked her what had happened. Besides admitting the answer on the basis of the fresh complaint doctrine, the trial court also admitted it as a prior consistent or inconsistent statement, thusly, "I told [the jury before trial began] some things you could look at to evaluate the credibility of a witness. . . . [O]ne of those was, did the witness make a statement in the past that is consistent or inconsistent with his or her testimony. [¶] In

10

other words, a statement in the past would be [the victim's] statement to [the mother's boyfriend] and to [the mother], and you look at that and evaluate that statement as told to you by [the mother] and as told to you by [the mother's boyfriend] with [the victim's] testimony. So were the statements made consistent or inconsistent[?]"

Because it makes no sense whatsoever that the prosecutor would want to impeach the victim with her prior inconsistent statements, it is apparent that the prosecutor was anticipating the introduction of the victim's statements to the forensic interviewer (in light of defense counsel's reliance on some of those statements in her opening statement and her assertion that she would introduce the statements if the prosecutor did not) and was actually attempting to rehabilitate the victim by introducing her prior consistent statements, i.e. the ones to her mother and to her mother's boyfriend, which were consistent with her trial testimony that defendant touched her genitals with his fingers and inconsistent with some of the statements she made during the forensic interview that defendant did not touch her. Of course, the jurors had no way of knowing this and knew only what the trial court had told them up to that point, which was that they could consider these statements as fresh complaints with the limited usage that accompanied statements admitted pursuant to this doctrine, and in judging the victim's credibility given that she had made statements that were consistent or inconsistent with her trial testimony. It was not until the presentation of evidence had concluded and the jury was being instructed that they were told, *for the first time*, about an additional use to which they could put these statements, and, in fact, all the victim's previous statements,

11

including the ones to her brothers, which was, according to CAlCRIM No. 318, "as evidence that the information in those earlier statements is true."**6** Once the forensic interview was admitted, the victim's prior consistent statements to her brothers, her mother and the mother's boyfriend were admissible to rehabilitate her under Evidence Code section 1236. That section provides, "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with Section 791." Evidence Code section 791 provides, in pertinent part, "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after . . . [¶] [e]vidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement." We disagree with defendant that these statements were not admissible as prior consistent statements under Evidence Code section 791 because they were offered into evidence *before* the tape of the victim's interview with the forensic interviewer was played for the jury. This is so because the jury was not informed of the expanded use to which they could apply the statements until *after* the interview was

_____

**6** The entire instruction was as follows, "You've heard evidence of a statement that a witness made before the trial. If you decide that the witness made the statement, you may use that statement in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] AND [¶] 2. As evidence that the information in the earlier statement is true."

12

admitted into evidence and defense counsel had referred to the victim's statements in the interview that were inconsistent with the victim's trial testimony during her opening statement to the jury. While defendant was free at trial to object to the introduction of the victim's statements to her brothers, her mother and her mother's boyfriend on the basis that the interview had not yet been introduced into evidence, the defense did not do so, most probably because defense counsel had already referred to it in her opening statement and anticipated introducing the interview, herself, if the prosecutor did not. Additionally, the statements were clearly admissible under the fresh complaint doctrine. Finally, defendant here is not contending that his conviction should be reversed because the trial court erred in allowing the introduction of the statements at a time when the condition of Evidence Code section 791 had not yet been met—he is contending that the jury instruction given on the basis of the admission of the evidence as consistent statements confused the jury about the instructions given on the fresh complaint doctrine. Clearly, the two were contradictory. However, ultimately, admission of the victim's statements as consistent statements was proper, therefore, it was appropriate for CALCRIM No. 318 to be given. We note that in their arguments to the jury, neither party called the jury's attention to the distinction between the use of the victim's statements as fresh complaints as compared to their use under CALCRIM No. 318—the prosecutor merely argued that all of the victim's prior statements supported her trial testimony that defendant had molested her and it was irrelevant whether her brothers had,

13

and defense counsel focused on her statements that her brothers had molested her and contended that there was insufficient evidence that defendant had.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

MILLER
J.

14